ALABAMA & VICKSBURG RAILWAY CO. *v.* MARGARET A. OVER-
STREET ET AL.

1. MASTER AND SERVANT. *Railroads. Death of servant. Instruction.
    Evidence.*

In an action for death of an employe by the falling of a bridge tim-
ber on him while at work under the bridge, the court charged
that if defendant's foreman directed another servant to go on
the bridge and first take off the nuts on bolts in timbers in the
bridge, used to hold said timbers safely, and to knock the bolts
out of the timbers, "and then put ropes around the timbers and
lower them, and that the doing of such acts were negligent," and
the foreman was present when such negligent work was per-
formed, and deceased lost his life from a piece of timber falling
on him when it was being so removed, defendant was liable.
Held, that in the absence of evidence fixing any order in which
the taking off the nuts, the knocking out of the bolts, and the
lowering of the timbers should be done, the instruction was
prejudicially erroneous in the use of the words "first" and
"then."

2. DIRECTION OF SUPERVISING AGENT. *Construction of testimony. Order
    of events.*

An order from a bridge foreman to one of his crew engaged in re-
pairing a bridge to take off the nuts and knock the bolts out of
a brace and get a line and lower it, is not negligent as to an em-
ploye at work under the bridge who is injured by the falling of
the brace when left unsupported, since the direction cannot be
construed as prescribing the order in which the several acts
necessary to the lowering of the brace were to be done.

3. DAMAGES. *Future prospects.*

Where, in an action for death, there was no evidence as to de-
cedent's prospects for the future, or as to his expectancy of life,
a charge authorizing the jury, on the issue of damages, to con-
sider deceased's physical condition at the time of his death, the
wages he was then earning, and his future prospects, and the
probable length of his life, was error.

4. CUSTOM. *Evidence.*

In an action for death of a servant by the falling of a bridge tim-
ber, refusal to permit defendant to introduce evidence as to the
custom in lowering such timbers was error.

FROM the circuit court of Newton county.

HON. JOHN R. ENOCHS, Judge.

This was a suit for damages for the death of T. R. Overstreet, alleged to have been wrongfully caused by the railway company. Deceased was the husband of the plaintiff, Margaret A. Overstreet, and the father of the other plaintiffs. It is charged in the declaration that deceased was killed through the negligence of a superior officer or servant of the railway company; that the decedent was an employe of the company, being a member of a bridge crew; and that at the time the fatal injuries were received he was engaged, with other members of the crew, operating under the orders of the foreman, in building a bridge, and he received the fatal injuries by the falling of a large piece of bridge timber upon him, which fell because of the negligence of the superior officer, or foreman, who had the right to control decedent and his fellow-servants. The testimony for plaintiffs was that decedent at time of the injury was a healthy, sound man, thirty-five years old, and earning $1.50 per day; that he had no property, and left his widow and children dependent on her father for support; that decedent and several others were engaged at work on the ground under the bridge when the foreman came up and told two other workmen, Babbington and Briggs, to go upon the bridge and remove some braces, in order to move a bent that was desired removed, which they were doing, and had taken the bolts out of one brace and lowered it, and were working at another brace, the bolts having been taken out of it, when it fell and struck Overstreet, who was at work under the bridge, and killed him. Some of the witnesses testified that Hall, the foreman, instructed Babbington to go on top of the bridge and line the braces and take off the nuts, knock out the bolts, and then lower the braces with a line. Babbington testified as follows: "He (Hall) told me to take off the nuts and knock out the bolts and get a line and lower them." Most of the witnesses said that Hall was present when the first brace was removed, and saw the way it was being done. Some

said he was still present when the second one was being removed, and very near when it fell. Others said Hall was some distance away at the time the brace fell. Babbington testified that he did the work just as Hall told him to do it. Simpson, a witness for defendant, was asked by defendant's counsel what the custom with the gang was with reference to taking down braces. Plaintiffs objected to this question, and the court sustained the objection, to which defendant excepted. Two witnesses for plaintiffs had testified as to this custom. The instructions given for plaintiffs, objected to by defendant, are set out in the opinion of the court. There were verdict and judgment for plaintiffs for $10,000. Defendant's motion for a new trial was overruled, and it appealed to the supreme court.

*McWillie & Thompson,* for appellant.

1. To hold that railroad employes who are not engaged in the operation of the railroad, but in doing work which other persons and corporations do, are within the terms of sec. 193 of the constitution of 1890, and the statutes of the state (Code 1892, § 3559; Laws 1896, p. 97; Laws 1898, p. 82), would render these provisions violative of the Federal constitution, in that it would be depriving the railroad corporations of their property without due process of law, and denying to them the equal protection of the laws, as guaranteed by the fourteenth amendment to the constitution of the United States. The foreman of the bridge crew, because they were mere bridge builders or repairers, was a fellow-servant of the deceased, and the demurrer to defendant's third plea should have been overruled.

2. The first instruction for plaintiffs is erroneous, because it is not predicated of the testimony. The only evidence which can be claimed, with even a shadow of reason, as supporting the instruction, is the testimony of Babbington as to what Hall directed him to do. Babbington's testimony is that Hall instructed him "to take off the nuts and knock out the bolts and get a line and lower the brace." The instruction practically

told the jury that this was sufficient evidence to justify a find-
ing that Hall required the procedure to be in the order of events
named or that he intended the work to be executed in that or-
der, without any proof of either.

The defendant was certainly entitled to have the witness,
Simpson, testify touching the custom in taking down braces,
and it. was error in the court below to sustain the plaintiffs'
objection thereto.   The error is not cured by the fact that the
custom was fairly well proved by the plaintiffs through other
witnesses.   The defendant had the right to prove it beyond
dispute or misunderstanding, which it no doubt could and would
have done by Simpson had not the court prevented.

The fourth instruction for plaintiffs is erroneous in telling
the jury that if they believe from the evidence that plaintiffs
are entitled to recover they may consider (going away from
the evidence) (1) decedent's physical condition, (2) the wages
he was earning at the time of his death, (3) his future pros-
pects for earning money and accumulating property, and (4)
the probable length of the life of decedent, in fixing the amount
of damages.   The jury were not at all restricted to the testimony
after determining that the plaintiffs were entitled to a recovery,
but were then turned loose in estimating damages and author-
ized to act on their own knowledge or conjectures.   *Yazoo, etc.,
R. Co. v. Smith,* 82 Miss., 656.   There is not one particle of
evidence showing or tending to show decedent's "future pros-
pects for earning money and accumulating property,"
and there was no testimony (unless it could be inferred
from his age and state of health by the jurors from common
knowledge) of the probable length of decedent's life had he not
been killed.

*Ethridge & McBeath,* for appellees.

1. Some of the witnesses say that Mr. Hall, foreman, instruct-
ed Babbington to go on top of the bridge and line the braces and
take off the nuts, knock out the bolts, and then lower them with

a line. Babbington, the man selected to do the work, and other witnesses say that Babbington was told to go on top and take off the nuts, knock out bolts, and then line and lower the braces. All agree, who undertake to locate Hall when the first sash or braces were lowered, that Hall was personally present when the first sash or brace was removed, and saw the way this was being done, and the brace or sash that fell and killed Overstreet was being removed the same way; that the only support to the braces or sashes after bolts were knocked out was the old spikes driven in the braces or sashes when first put up. The first brace held and was safely lowered; the other, or second, fell, killing Overstreet.

The first instruction for plaintiff was properly granted. Babbington says in answer to questions put to him as to what was depended upon to hold the timber after the bolts were taken out of the timber, "That there were spikes in the timber which they depended upon after the nuts were taken off and bolts knocked out, and that the first was taken off this way," and that Hall, the foreman, was present when this was done, and Otto Stevens says Hall was present and within four or five feet of where the timber fell. Here is Babbington's statement as to his directions how to do the work from Hall in answer to the following question: "When you were engaged there in that work, how did Foreman Hall direct you to lower the brace?" Ans. "He told me to take off the nuts and knock out the bolts and get a line and lower them." Then on cross-examination he reiterated this statement; and in further answering the attorney for appellant further on, the following question being propounded to him, "Why did not you use the rope as Mr. Hall told you in lowering the second one?" he says: "I was doing just like I had been doing all the time." Hall was present and saw how he was doing, and he knew that he, Babbington, was knocking bolts out and depending upon "old spikes" to hold the braces until a rope was put on them to lower.

2. The demurrer to defendant's third plea was properly sustained. This plea set up the unconstitutionality of § 3559, Code 1892, and this was met by demurrer of plaintiffs. The plea is no defense to the action, and the court properly so held. Section 3559 is not repugnant to the fourteenth amendment of the constitution of the United States. It is in the language of sec. 193 of the constitution of the state, and is not special legislation.

3. The question for the jury was not the custom in doing this sort of work, and testimony of this character was properly excluded. It may have been the custom to negligently do the work, this would not relieve them. The court did not permit this fact to be shown by a number of witnesses for appellant over the objection of appellee's counsel. This question was put to Babbington and numbers of others. In his answer, on cross-examination by appellant, Babbington said: "I was doing just like I had been doing on the rest."

4. The contention of the appellant as to the fourth instruction is not tenable. The instruction does not in any way conflict with the case of *Yazoo & Mississippi Valley Railway Co.* v. *Smith,* 82 Miss., 656. The jury are not told that "Then the defendant is liable in damages in such sum as the jury shall see fit to assess under the instructions of the court as given for plaintiff," but are told, "If the jury believe by a preponderance of the evidence that plaintiffs are entitled to recover in this suit, they may take into consideration the physical condition of the deceased at the time of his death, the wages he was then earning, and his future prospects for earning money and accumulating property, and the probable length of life of deceased, in fixing the amount of damages." Now, then, this instruction, with the preceding instruction, clearly announces the law on the subject of damages. It is true, we might have asked to have the jury instructed as to the damages, present value of his life, etc., but this in no way transgresses any rule of law laid down by this court, certainly not by the decision heretofore referred to.

5. Hall was not a fellow-servant of Overstreet, and the fifth instruction so told the jury. He was the superior officer or agent of appellant. *Cheaves* v. *Railway Co.*, 82 Miss., 48; *Gal., H. & L. A. Ry. Co.* v. *Ford*, 46 S. W., 77; *Houston & F. C. Ry. Co.* v. *Stewart*, 48 S. W., 799; *C., H. & D. R. Co.* v. *Morgrat*, 37 N. E., 11; *Union Pac. Ry. Co.* v. *Doyle*, 70 N. W., 43 (s.c., 50 Neb., 555); *Rutherford* v. *So. Ry. Co.*, 56 S. C., 446 (s.c., 35 S. E., 136); *Pierce, Receiver,* v. *Van Dusen*, 78 Fed., 693; *C., H. & D. R. Co.* v. *Thibaud*, 114 Fed. Rep., 918; *Taylor* v. *Bradford*, 83 Miss., 157.

WHITFIELD, C. J., delivered the opinion of the court.

The instruction No. 1 for appellees is in these words: "The court instructs the jury that if they believe from the evidence, by preponderance thereof, that Hall, the superior agent of defendant, directed Babbington to go upon the bridge of defendant, and to first take off the nuts of certain bolts screwed on bolts then in pieces of timber in said bridge, used for the purpose of holding safely said timber, and to knock said bolts out of the said heavy pieces of timber, and then put ropes around the timbers and lower them, and that the doing of said acts were negligent; that said Hall was present when said negligent work was performed; and that T. R. Overstreet lost his life from a piece of timber falling on him and producing the wounds that caused his death when said timber was being so removed—the defendant is liable, and the jury should so find." There is no warrant in the testimony for the use of the words "first" and "then" in this instruction. The testimony does not fix any order in which the three things were to be done. The instruction is clearly erroneous for this reason. It is insisted that this instruction is also erroneous as assuming that Hall was present when the brace which killed Overstreet fell. But there is testimony both ways on this point, and the jury settled the facts.

The fourth instruction is in these words: "If the jury believe by a preponderance of the evidence that plaintiffs are entitled to recover in this suit, they may take into consideration the physical condition of deceased at time of his death, the wages he was then earning, and his future prospects for earning money and accumulating property, and the probable length of the life of deceased, in fixing the amount of damages." There is no testimony whatever as to Overstreet's prospects for the future, his future accumulations of property, or as to his expectancy of life—absolutely none. Learned counsel for appellees, in their brief, say that his expectancy was thirty-two years. If there was any evidence to this effect in the court below, it is omitted from this record. We are bound by the record, and the instruction is fatally erroneous. The jury had no standard by which to fix damages.

It was error, also, to refuse to allow appellant to prove, if it could, by Simpson and others, what the custom was as to lowering braces. The error is more noticeable since two witnesses for appellees had been allowed to testify to the custom. The question to Babbington as to what he "expected to hold the brace" when the bolts should have been knocked out was not in proper form. It would be competent to show what, as a fact, could hold them, but not what he expected would hold them.

We do not consider the constitutional question involved, because of the well-settled canon that such questions will not be decided save when necessary to decision. What we have said points out sufficiently the errors to be avoided on a new trial.

*Reversed and remanded.*